Jesse C Swanhuyser (State Bar No. 282186)
ANACAPA LAW GROUP, INC.
508 East Haley Street
Santa Barbara, CA 93103
Tel: (805) 689-1469
Email: jswanhuyser@anacapalawgroup.com

Attorney for Plaintiff
CALIFORNIA COMMUNITIES AGAINST TOXICS

William W. Funderburk (State Bar No. 176244)
Anna Le May (State Bar No. 258312)
Castellón & Funderburk LLP
811 Wilshire Blvd Ste 1025
Los Angeles, CA 90017-2649
Tel. (213) 623-7515
Fax. (213) 532-3984
Email: wfunderburk@candffirm.com

Attorney for Defendant
MATTCO FORGE, INC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA COMMUNITIES AGAINST TOXICS, a non-profit public benefit association,<br><br>          Plaintiff,<br><br>vs.<br><br>MATTCO FORGE, INC., a California corporation,<br><br>          Defendants. | Case No.: 2:17-cv-03793-TJH-ASx<br><br>[~~PROPOSED~~] CONSENT DECREE AND ORDER  JS6<br><br>(Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.*)<br><br><br>Judge: Hon. Terry J. Hatter |

WHEREAS, California Communities Against Toxics ("CCAT" or "Plaintiff") is a non-profit public benefit association of community groups and concerned citizens around the State of California, with its main office in Rosamond, California;

WHEREAS, CCAT is dedicated to working with communities to advocate for environmental justice and pollution prevention. CCAT has members living in and around Paramount, as well as throughout the Los Angeles River Watershed. CCAT and its members are deeply concerned with protecting public health and the environment in and around their communities;

WHEREAS, Mattco Forge, Inc. ("Mattco" or "Defendant") owns and operates an industrial facility at and/or near 16443 Minnesota Avenue and 7530 Jackson Street in Paramount, California ("Facility");

WHEREAS, Mattco as a matter of corporate policy has set as a priority being a good corporate citizen focused on making its local communities better places to live and work;

WHEREAS, on March 2, 2017, CCAT sent a sixty (60) day notice letter ("Notice Letter") to Defendant, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board") and the Regional Water Quality Control Board ("Regional Board"), stating its intent to file suit for alleged violations of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA");

WHEREAS, the Notice Letter alleged violations of the CWA for Defendant's alleged discharges of pollutants into storm drains and receiving waters, Reach 2 of the Los Angeles River ("River"), Reach 1 of the River, the River's Estuary, San Pedro Bay and the Pacific Ocean (collectively "Receiving Waters"), in alleged violation of National Pollution Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Board] Water Quality Order No. 97-03-DWQ ("1997 Permit"), as superseded by

Order No. 2014-0057-DWQ ("2015 Permit"). The 1997 Permit and/or 2015 Permit may be referred to generically as the "Storm Water Permit;"

**WHEREAS,** during the 60-Day notice period to the present, Mattco made significant efforts to review stormwater management practices, including installation of new stormwater management equipment at the Facility;

**WHEREAS,** during the 60-Day notice period to the present CCAT and Mattco have been in comprehensive, good-faith settlement negotiations;

**WHEREAS,** sampling of stormwater discharges at the Facility have shown significant improvement, with most sample results below the numeric limits set forth in the EPA's 2015 Multi-Sector General Permit.

**WHEREAS,** on May 19, 2017 CCAT filed a complaint ("Complaint") against Defendant in the United States District Court, Central District of California entitled *California Communities Against Toxics vs. Mattco Forge, Inc.*;

**WHEREAS,** the Defendant denies all allegations of the Complaint;

**WHEREAS,** Plaintiff and Defendant (collectively referred to herein as the "Settling Parties" or "Parties") agree that it is in the Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint without further proceedings;

**WHEREAS,** all actions taken by the Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.    The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A);

2. Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. §1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District;

3. The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365;

4. CCAT has standing to bring this action;

5. The Court shall retain jurisdiction over this matter for purposes of interpreting, modifying or enforcing the terms of this Consent Decree, for as long as is necessary for the Court to resolve any motion to enforce this Consent Decree.

## I. OBJECTIVES

6. It is the express purpose of the Parties entering into this Consent Decree to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251, *et seq.*, and to resolve those issues alleged by CCAT in its Complaint. These objectives include compliance with the provisions of this Consent Decree, and compliance with the requirements of the 2015 Permit and all applicable provisions of the CWA which are the subject of this Consent Decree—specifically Receiving Water Limitations A, B and C at Section VI of the 2015 Permit, and Effluent Limitations A, B and C at Section V of the 2015 Permit, which require, *inter alia*, that Defendant ensure that industrial storm water discharges and authorized non-stormwater discharges do not cause or contribute to an exceedance of any applicable Water Quality Standards ("WQS"), and implement Best Management Practices ("BMPs") that comply with the Best Available Technology ("BAT") and Best Conventional Pollutant Control Technology ("BCT") requirements of the 2015 Permit. BMPs must be developed and implemented to prevent discharges or to reduce contamination in storm water discharged from the Facility in compliance with this Consent Decree.

## II.   EFFECTIVE DATE AND TERMINATION

7.    The term "Effective Date," as used in this Consent Decree, shall mean the date the Court enters the final Consent Decree.

8.    This Consent Decree will terminate on its own terms three (3) years from the Effective Date (the "Termination Date"), unless there is a prior ongoing, unresolved dispute regarding Defendant's compliance with its terms as described in a Notice of Dispute filed with the Court prior to the Termination Date, which Notice shall identify the issue in dispute. The filing of such a Notice of Dispute shall extend the Termination Date until the Court determines the dispute has been resolved and thereupon dismisses the case, or, alternatively, if the Settling Parties file a stipulation for dismissal.

9.    Mattco may move the Court to terminate the Consent Decree at any time provided that the following conditions, or such alternative conditions to which the Settling Parties agree in writing after compliance with the meet and confer provisions of paragraph 43 below, are satisfied:

    a. Defendant has fully implemented all measures detailed in paragraph 15 below, and all other applicable requirements to be completed under this Consent Decree prior to the date on which the Defendant moves for termination;

    b. Defendant has revised and fully implemented its Storm Water Pollution Prevention Plans ("SWPPP") and Monitoring and Reporting Programs ("M&RP") pursuant to the requirements of this Consent Decree and the 2015 Permit;

    c. There are no ongoing, unresolved disputes regarding Defendant's compliance with this Consent Decree, including but not limited to any dispute related to the payment of fees/costs, Supplemental Environmental Project ("SEP") implementation, compliance monitoring fees, implementation of storm water and non-storm water control BMPs, and compliance with numeric levels detailed below at Table 1;

d. All payments required under sections F (paras. 35 and 36) and G (paras. 39 and 40) of this Consent Decree are made; and

e. Following the Effective Date of this Consent Decree, monitoring data from four (4) consecutive storm water samples collected at each discharge point demonstrate pollutant concentrations in stormwater discharges do not exceed the numeric levels in Table 1;

10.   To terminate early as provided above, Defendant shall file a motion for early termination with the Court. Defendant shall provide Plaintiff and its counsel with written notice at least thirty-five (35) days prior to filing any motion for termination of the Consent Decree.

11.   Upon receipt of the written request to terminate, CCAT may conduct an inspection of the Facility within thirty (30) calendar days and Matteo will work with CCAT to schedule and accommodate the inspection, if requested, within the 30-day period. During the Site Inspection, Defendant shall allow CCAT and/or its representatives access to the Facility's SWPPP, M&RP, and storm water monitoring records. Further, Defendant shall allow CCAT and/or its representatives to collect split samples of storm water or non-stormwater discharges during the site inspection, if applicable, at the Facility. CCAT shall be permitted to take photographs or video recording during any Site Inspection and will, upon request, provide photographs and/or video to Matteo within fourteen (14) calendar days. Notwithstanding the foregoing, CCAT agrees that all individuals participating in a Site Inspection will execute, and be subject to, waivers, releases and similar agreements as were executed in connection with the Site Inspection conducted on June 26, 2017, including but not limited to those forms establishing restrictions on allowed recorded documentary images or depictions.

12.   Unless there is an ongoing, unresolved dispute regarding Defendant's compliance with this Consent Decree, thirty-five (35) calendar days after written notice

was given, Defendant may move the Court to terminate the Consent Decree and CCAT shall not oppose the motion.

## III.   COMMITMENTS OF THE PARTIES

### A.   Industrial Storm Water Pollution Control Measures

13.    Any non-stormwater discharges ("NSWDs") from the Facility must be authorized by the 2015 Permit or another NPDES permit.

14.    All storm water pollution measures required by this Consent Decree will be implemented at the Facility. Any disputes over the adequacy and/or timing of the implementation of BMPs shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

15.    BMP Plan. Matteo has or will implement the following additional BMPs by April 1, 2018, or the Effective Date of this Consent Decree, whichever occurs later;

    a. Install, maintain and replace (as necessary) appropriate covering on presses at facility's northwestern perimeter (e.g. heavy duty water-proof tarps, industrial poly sheeting) to prevent stormwater contact;

    b. Permanently plug the small drain hole in the southwestern corner of the Facility assuming it is not operationally needed for drainage;

    c. Install, maintain and replace as necessary Filtrexx Envirosocks or equivalent filter BMP at Discharge & Sampling Points Nos. 1, 2, 3, and 4, as identified on the attached Site Map. This BMP is not feasible at Discharge & Sampling Point No. 5 due to high traffic and any exceedances will be addressed through Action Plan preparation/assessment, or via dispute resolution procedures if necessary;

    d. Install, maintain and replace as necessary Ultra-Drain Guard, Heavy Metal model catch basin inserts (or equivalent) at all storm drains;

    e. Fill all substantial or obvious cracks and crevices in ground surfaces using cement, epoxy or similar permanent and non-polluting material with a goal to limit the amount of metal dust/particulate that is easily mobilized by stormwater;

    f. Weekly sweeping of all outside ground surfaces potentially affected by industrial activity, including through aerial deposition, with Nilsick CS7010 sweeper or equivalent, including the area of track out on Minnesota Ave. at gate northeast of Tool Building;



g. Between May 1 and September 30 of each year, monthly sweeping/vacuuming of areas that are not effectively cleaned by larger mechanized sweeper(s) (e.g. under stored materials, along buildings, around outdoor storage);

h. Between October 1 and April 30, weekly sweeping/vacuuming of areas that are not effectively cleaned by larger mechanized sweeper(s) (e.g. under stored materials, along building edges, outdoor storage);

i. Remove and replace peeling paint on southern perimeter of Tool Building;

j. Maintain an adequately sized secondary containment system for waste oil storage areas and/or move waste oil structures indoors;

k. Immediately and thoroughly clean any and all spills or leaks of oil;

l. Twice annually, including on or about October 1 of each year, thoroughly clean as necessary all areas likely affected by aerial deposition of industrial emissions using a pressure washer or equivalent, and properly dispose of any produced wastes;

m. Install a rain gage, and maintain contemporaneous records of each storm event generating more than 0.1 inches of rain.

16. The goal of the BMPs outlined in paragraph 15 is ensure that Mattco achieves and maintains full compliance with the spirit and letter of the Storm Water Permit during and beyond the term of this Consent Decree. Mattco shall implement and maintain additional BMPs, which may include the installation of an active stormwater treatment system, if sampling data indicates such additions are appropriate due to significant and/or repeated exceedances of the numeric limits contained in TABLE 1 at paragraph 22 below.

B. Monitoring and Reporting Program (M&RP)

17. Sample Frequency. Defendant shall collect storm water samples in the event that discharges occur at the Facility from at least four (4) qualifying storm events per Reporting Year (July 1 to the following June 30) in accordance with Section XI.B. of the 2015 Permit. Any failure to sample a discharge from each discharge location at the Facility until the specified four (4) qualifying storm events per Reporting Year have been sampled shall be documented and submitted to CCAT within ten (10) days of the date a sample was required to have been collected but was not.

18.    Sample Analysis. The Defendant shall analyze samples collected in accordance with sampling and analysis procedures specified by the Permit for Total Suspended Solids, pH, Oil & Grease, zinc, aluminum, iron, hexavalent chromium, nickel, lead, titanium, and cobalt, as well as such additional constituents required by the Storm Water Permit except magnesium[1]. The Defendant shall select laboratories and analytical limits such that, at a minimum, the method detection limits are below the numeric limits in Table 1.

19.    Discharge Points. The Defendant shall collect reportable storm water samples from each of the following locations at the Facility, as identified on the attached Site Map:

   a.    Sample Point 1;
   b.    Sample Point 2;
   c.    Sample Point 3;
   d.    Sample Point 4;
   e.    Sample Point 5.

20.    Written Report. Defendant shall submit a written report to CCAT at the end of each Reporting Year listing all storm events that occurred and resulted in a discharge at any of the Facility's stormwater outfalls. The report shall be submitted on or before July 30 every year during the term of this Consent Decree and must include a table summarizing analytical results from Facility's storm water samples and comparing those results to the numeric limits in Table 1.

21.    Revising the M&RP. Within thirty (30) calendar days of the Effective Date of this Consent Decree, Defendant shall revise its M&RP within its SWPPP for the Facility to incorporate the requirements of this Consent Decree and the 2015 Permit. The Defendant shall submit the revised M&RP to CCAT for review and comment as soon as it is completed but in any event no later than within thirty (30) calendar days

_____

[1] There will be no Numeric Action Level associated with Magnesium because of the issues related detecting limit for this constituent pending Regional Water Board concurrence.



following the Effective Date. CCAT shall provide comments, if any, to the Defendant within thirty (30) calendar days following receipt of the revised M&RP. The Defendant shall incorporate Plaintiff's comments into the M&RP, or shall justify in writing why any comment is not incorporated within thirty (30) calendar days of receiving comments. Any disputes over the adequacy of the revised M&RP shall be resolved pursuant to the dispute resolution provisions set out in Section IV below.

**C.    Numeric Limits**

22.    Numeric Limits. If sampling at any single discharge point identified above at paragraph 19 demonstrate an exceedance of four (4) numeric limits in Table 1 in a single reporting year, Matteo shall comply with the relevant requirements specified below.

TABLE 1. NUMERIC LIMITS

| Contaminant | Numeric Limits |
|---|---|
| Total Suspended Solids | 100 mg/L |
| pH | 6.5-8.5 |
| Oil and Grease | 15 mg/L |
| Zinc | 0.117 mg/L |
| Aluminum | 0.75 mg/L |
| Iron | 1.0 mg/L |
| Hexavalent Chromium | 0.016 mg/L |
| Arsenic | 0.34 mg/L |
| Cadmium | 0.0043 mg/L |
| Nickel | 0.47 mg/L |
| Lead | 0. 0816 mg/L |
| Titanium | Report only |
| Magnesium | Report only |
| Cobalt | Report only |

23.    Action Plan for Table 1 Exceedances during the Consent Decree. In any Reporting Year during which sampling at any single discharge point demonstrates an exceedance of four (4) or more numeric limits in Table 1, Matteo shall prepare and submit a plan for reducing and/or eliminating the discharge of those pollutants ("Action

Plan") to CCAT by July 1 following the Reporting Year in which the exceedances giving rise to the obligation to submit an Action Plan occurred.

24 Action Plan Requirements. Each Action Plan submitted shall be in writing and shall include, at a minimum: (1) the identification of the pollutant(s) exceeding Table 1's numeric limits, (2) an assessment of the source of each exceedance, (3) the identification of additional BMPs that will be implemented to achieve compliance with the respective numeric limits, and (4) time schedules for implementing proposed BMPs, which shall not exceed the following October 1 unless otherwise agreed by the Parties in writing.

25. Action Plan Review. CCAT shall have 30 days from receipt of Defendant's Action Plan to provide Defendant with comments. Within 30 days from the date of receipt of CCAT's written comments on the Action Plan, Defendant shall provide CCAT with a written explanation as to the reasons Defendant is not incorporating any particular CCAT comment into its Action Plan. Any disputes as to the adequacy of the Action Plan shall be resolved pursuant to the dispute resolution provisions set out in Section IV below.

26. If any structural BMPs require any government agency approval, then Defendant shall contact CCAT to request an extension of the deadline, if necessary, to implement the structural BMPs requiring agency approval. CCAT shall not unreasonably withhold consent to any extension request.

27. Defendant shall have until October 1 following the Reporting Year in which the obligation to submit an Action Plan occurred to implement the Action Plan. Defendant shall notify CCAT in writing when the Action Plan has been implemented.

**D. Storm Water Pollution Prevention Plan**

28. SWPPP Revisions. Within thirty (30) calendar days of the Effective Date of this Consent Decree, Defendant shall revise the SWPPP to comply with Section X of the 2015 Permit and this Consent Decree. The Defendant shall submit the revised

1  SWPPP to CCAT for review and comment as soon as it is completed, but in any event

2  no later than thirty (30) calendar days following the Effective Date. CCAT shall provide

3  comments, if any, to Defendant within thirty (30) calendar days of receipt of the

4  SWPPP. Defendant shall incorporate Plaintiff's comments into the SWPPP, or explain in

5  writing why any comment is not incorporated, within thirty (30) calendar days of

6  receiving comments. Any disputes as to the adequacy of the revised SWPPP shall be

7  resolved pursuant to the dispute resolution provisions set out in Section IV below.

8      **E.    Employee Training**

9      29.    Within thirty (30) calendar days of the Effective Date, Defendant shall

10  review and revise its employee training program established in its SWPPP to comply

11  with the requirements of this Consent Decree and the 2015 Permit, including any

12  training materials, as necessary, for implementation of the training program ("Training

13  Program").

14      30.    The Training Program shall provide (a) that there be a sufficient number of

15  employees delegated to achieve compliance with the Storm Water Permit and this

16  Consent Decree, and (b) that these employees are properly trained to perform the

17  required compliance activities under the 2015 Permit and this Consent Decree. Such

18  Training Program shall be specified in the SWPPP.

19      31.    The Training Program shall require specific training to include at least the

20  following:

21      a.    Non-Storm Water Discharge Training. The Defendant shall train all

22  employees about the 2015 Permit's prohibition of non-storm water discharges so that

23  employees know what non-storm water discharges are, how to detect them, and how to

24  prevent them;

25      b.    BMP Training. The Defendant shall train all employees responsible for

26  BMP implementation and maintenance to ensure that BMPs are used effectively to

27  prevent the exposure, discharge, and/or treatment of storm water at the Facility.

28

c.   Sampling Training. The Defendant shall train all individuals collecting
samples at the Facility pursuant to this Consent Decree or the 2015 Permit on the proper
sampling protocols, including chain of custody requirements, to ensure storm water
and/or non-storm water samples are properly collected, stored, and submitted to a
certified laboratory;

d.   Visual Observation Training. The Defendant shall provide training to all
individuals performing visual observations at the Facility pursuant to this Consent
Decree and the 2015 Permit.

32.   Training shall be provided by a Qualified Industrial Storm Water
Practitioner ("QISP", as defined in Section IX.A of the 2015 Permit) familiar with the
requirements of this Consent Decree and the 2015 Permit, and shall be repeated as
necessary to ensure that all relevant employees are familiar with the requirements of this
Consent Decree, the 2015 Permit, and the Facility's SWPPP. All relevant new staff
shall receive this training before assuming responsibilities for implementing the SWPPP
or the M&RP.

33.   The Defendant shall maintain training records to document compliance with
this paragraph, and shall provide CCAT with a copy of these records within fourteen
(14) days of receipt of a written request.

34.   Annual Site Inspections. CCAT may conduct one annual site inspection
("Site Inspection") on terms substantially identical to those agreed to by the Settling
Parties for the June 26, 2017 site visit. Site Inspections shall occur during normal
business hours, and CCAT will provide Defendant with as much notice as possible, but
at least twenty-four (24) hours notice prior to a Site Inspection in anticipation of wet
weather, and seventy-two (72) hours notice during dry weather.  Notice will be provided
by telephone and electronic mail. CCAT agrees that all individuals participating in a Site
Inspection will execute, as necessary, waivers, releases and similar agreements.
Defendant shall allow CCAT and/or its representatives to collect split samples of storm

water or non-stormwater discharges during the site inspection, and/or collect swab
samples taken from surfaces likely to receive aerial deposition of industrial emissions
from the Facility. All costs associated with the collection of water or swab samples shall
be wholly borne by CCAT.

**F.   Compliance Monitoring and Reporting**

35.   CCAT's Compliance Monitoring. Defendant shall make a one-time
payment a total of two thousand dollars ($2,500.00) to compensate CCAT for costs and
fees to be incurred for monitoring Defendant's compliance with this Consent Decree.
Payment shall be made within fifteen (15) days of the Effective Date payable to
California Communities Against Toxics addressed to: CCAT, PO Box 845, Rosamond,
CA 93560 and sent via courier or overnight delivery. Failure to submit payment as
required under this paragraph will constitute a breach of the Consent Decree.

36.   Action Plan Payments. Defendant shall pay $1,500.00 for each Action Plan
for which CCAT submits substantive comments under paragraph 25 above. Payment
shall be made on the date the Action Plan is submitted payable to California
Communities Against Toxics addressed to: CCAT, PO Box 845, Rosamond, California
93560, and sent via courier or overnight delivery. Failure to submit a payment as
required under this paragraph will constitute a breach of the Consent Decree.

37.   Data Reporting. During the life of this Consent Decree, Defendant shall
provide Plaintiff with a copy of all Consent Decree and 2015 Permit compliance and
monitoring data, including any inspection reports which Mattco is required to maintain
under the 2015 Permit, on a quarterly basis. The Defendant shall provide Plaintiff with
all stormwater sampling and analytical results taken at the Facility within fifteen (15)
days of the Defendant's receipt of all results for each sampling event.

38.   Document Provision. During the life of this Consent Decree, Defendant
shall copy Plaintiff on all documents and communications related to stormwater
discharges at the Facility that are submitted to the Regional Board, the State Board,

and/or any State, local, county, or municipal agency authorized to regulate stormwater. Such reports and documents shall be provided to CCAT concurrently as they are sent to the agencies and/or municipalities. Any correspondence related to stormwater discharges received from any such State, county, or municipal regulatory agency, shall be provided to CCAT within five (5) business days of receipt by the Defendant.

### G. Environmental Project, Reimbursement of Litigation Fees and Costs, and Stipulated Penalties

39.    Environmental Project. The Defendant agrees to make a payment of thirty thousand dollars ($30,000) within thirty (30) calendar days of the Effective Date to As You Sow for a project related to water quality designed to analyze, reduce, prevent, or otherwise mitigate the ecological and/or public health effects of storm water and/or non-stormwater discharges into Los Angeles area waterbodies. The payment shall be mailed via certified mail or overnight delivery to: As You Sow; Attn: CCAT v Mattco Forge, Inc.; 1611 Telegraph Avenue, Suite 1450, Oakland, CA 94612.

40.    Reimbursement of Plaintiffs' Fees and Costs. The Defendant agrees to partially reimburse Plaintiff for its investigation fees and costs, consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter in an amount totaling twenty-nine thousand five-hundred dollars ($29,500.00). All such payments shall be made payable Anacapa Law Group, Inc. and delivered by certified mail or overnight delivery at 508 East Haley Street, Santa Barbara, CA 93103.

### H. Agency Review of Consent Decree

41.    Plaintiff shall submit this Consent Decree to the United States Department of Justice and the United States Environmental Protection Agency (the Federal Agencies), within three (3) business days of the final signature of the Parties, for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five

(45) calendar days after receipt by both agencies, as evidenced by written acknowledgement of receipt by the agencies or the certified return receipts, copies of which shall be provided to Defendant. In the event that the Federal Agencies object to entry of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies.

42.     Plaintiff shall notify the Court of the receipt date by the Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar to the 45 day review period.

## IV.     DISPUTE RESOLUTION

43.     This Court shall retain jurisdiction over this matter for the purposes of adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

44.     Meet and Confer. Either party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other party in writing of the matter(s) in dispute and of the disputing party's proposal for resolution under this Section. The Parties shall then meet and confer in an attempt to resolve the dispute no later than thirty (30) calendar days from the date of the notice.

45.     If the Parties cannot resolve the dispute within 30 days after the meet and confer described in paragraph 44, the Parties agree to request a settlement meeting before the Judge assigned to this action. In the event that the Parties cannot resolve the dispute by the conclusion of the settlement meeting with the Judge, the Parties agree to submit the dispute via motion to the District Court.

46.     In resolving any dispute arising from this Consent Decree, the Court shall have discretion to award attorneys' fees and costs to either party. The relevant portions of the then-applicable Clean Water Act and Rule 11 of the Federal Rules of Civil Procedure and applicable case law interpreting such provisions shall govern the

allocation of fees and costs in connection with the resolution of any disputes before the
District Court. Plaintiff and Defendant agree to file any waivers necessary for the Judge
to preside over any settlement conference and motion practice.

**V.   MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

47.   In consideration of the above, upon the Effective Date of this Consent
Decree, the Parties hereby fully release, except for claims for Defendant's failure to
comply with this Consent Decree and as expressly provided below, each other and their
respective successors, assigns, officers, agents, employees, and all persons, firms and
corporations having an interest in them, from any and all alleged CWA violations
claimed in the Complaint, up to and including the Termination Date of this Consent
Decree.

48.   Nothing in this Consent Decree limits or otherwise affects Plaintiff's or
Defendant's respective rights to address or take any position that it deems necessary or
appropriate in any formal or informal proceeding before the Regional Board, EPA, or
any other judicial or administrative body on any other matter or claim not addressed in
this Consent Decree and relating to the Defendant.

49.   Neither the Consent Decree nor any payment pursuant to the Consent
Decree shall constitute or be construed as a finding, adjudication, or acknowledgement
of any fact, law or liability, nor shall it be construed as an admission of violation of any
law, rule, or regulation. The Defendant maintains and reserves all defenses they may
have to any alleged violations that may be raised in the future.

50.   Force Majeure. The Defendant shall notify CCAT pursuant to the terms of
this paragraph, when timely implementation of the requirements set forth in this Consent
Decree becomes impossible, despite the timely good-faith efforts of the Defendant, due
to circumstances beyond the reasonable control of the Defendant or its agents, and which
could not have been reasonably foreseen and prevented by the exercise of due diligence
by the Defendant. Any delays due to Defendant's failure to make timely and bona fide



applications and to exercise diligent efforts to obtain necessary permits, or due to normal
inclement weather, shall not, in any event, be considered to be circumstances beyond
Defendant's control. In no circumstances shall a claim of inability to pay be considered
Force Majeure.

a.     If the Defendant claims impossibility, it shall notify CCAT in writing
within twenty-one (21) calendar days of the date that the Defendant first knew of the
event or circumstance that caused or would cause a violation of this Consent Decree.
The notice shall describe the reason for the nonperformance and specifically refer to this
Section. It shall describe: i) the anticipated length of time the delay may persist; ii) the
cause or causes of the delay; iii) the measures taken or to be taken by the Defendant to
prevent or minimize the delay; iv) the schedule by which the measures will be
implemented; and v) the anticipated date of compliance. The Defendant shall adopt all
reasonable measures to avoid and minimize such delays.

b.     The Parties shall meet and confer in good-faith concerning the non-
performance and, where the Parties concur that performance was or is impossible,
despite the timely good faith efforts of the Defendant, due to circumstances beyond the
control of Defendant that could not have been reasonably foreseen and prevented by the
exercise of due diligence by the Defendant, the Parties shall agree upon new deadlines.

c.     If CCAT disagrees with the Defendant's notice, or in the event that the
Parties cannot timely agree on the terms of new performance deadlines or requirements,
either party shall have the right to invoke the Dispute Resolution Procedure pursuant to
Section IV. In such proceeding, the Defendant shall bear the burden of proving that any
delay in performance of any requirement of this Consent Decree was caused or will be
caused by force majeure and the extent of any delay attributable to such circumstances.

d.     If applicable, Defendant shall diligently file and pursue required
applications for permits, consents, and approvals for the structural BMPs described in
this Consent Decree, and shall diligently pursue the procurement of contractors, labor

and materials to complete all such BMPs by the deadlines set forth herein, and shall use reasonable good faith efforts to meet these deadlines. Defendant shall be excused from meeting the deadlines in this Consent Decree for a specific BMP if circumstances beyond the reasonable control of Defendant in obtaining any required governmental permits, consents, or approvals due to the permitting agency's actions or inactions or delays associated with the fabrication and/or construction of materials prevent the attainment of the deadline for a specific BMP. Such delays may be excused if all of the following requirements are met: 1) Defendant has notified CCAT via email and first class mail within ten (10) days of first learning about the anticipated delay; and 2) Defendant continues to exercise due diligence and reasonable good faith efforts in pursuing the permitting and implementation of the BMP in question and proposes a reasonable revised deadline. Any excused delay shall not excuse Defendant from implementing its other, unexcused obligations under this Consent Decree.

## VI.  MISCELLANEOUS PROVISIONS

51.  <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the 2015 Permit, the Clean Water Act, or specifically herein.

52.  <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

53.  <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

54.  <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by regular mail or electronic mail as follows:

| | |
|---|---|
| If to Plaintiff: | If to Defendant: |
| Jesse C Swanhuyser<br>ANACAPA LAW GROUP, INC.<br>508 East Haley Street<br>Santa Barbara, CA 93103<br>jswanhuyser@alg.law | William W. Funderburk<br>Castellón & Funderburk LLP<br>811 Wilshire Blvd Ste 1025<br>Los Angeles, CA 90017-2649<br>wfunderburk@candffirm.com |
| With copies to: | With copies to: |
| Jane Williams, Executive Director<br>California Communities Against Toxics<br>P.O. Box 845<br>Rosamond, CA 93560<br>dcapjane@aol.com | Robert Lewis, President<br>Mattco Forge, Inc.<br>16443 Minnesota Ave<br>Paramount, California 90723<br>rlewis@mattcoforge.com |

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

55.    Effect of Consent Decree. Plaintiff does not, by its consent to this Consent Decree, warrant or aver in any manner that the Defendant's compliance with this Consent Decree will constitute or result in compliance with any federal or state law or regulation. Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of the Defendant to comply with all federal, state, and local laws and regulations governing any activity required by this Consent Decree.

56.    Counterparts. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

57.    Modification of the Consent Decree. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties.

58. **Full Settlement**. This Consent Decree constitutes a full and final settlement of this matter.

59. **Integration Clause**. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

60. **Authority**. The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the party whom s/he represents to enter into the terms and conditions of this Consent Decree.

61. The provisions of this Consent Decree apply to and bind the Parties, including any successors or assigns. The Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Parties, and to legally bind the Parties to its terms.

62. The Parties agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms. By entering into this Consent Decree, the Defendant does not admit liability for any purpose as to any allegation or matter arising out of this Action.

IN WITNESS WHEREOF, the undersigned have executed this [Proposed] Consent Decree as of the date set forth below.

ANACAPA LAW GROUP, INC.

by: _____
Jesse Swanhuyser
Attorney for Plaintiff

Date: __Feb 5__, 2018

CASTELLÓN & FUNDERBURK LLP

by: _____
William Funderburk
Attorney for Defendant

Date: __2 b 2__, 2018

[Proposed] Consent Decree and Order                                21

Dated: April 10, 2018

IT IS SO ORDERED.

Terry J. Hatter, Jr.

Hon. Terry J. Hatter, Jr.
U. S. DISTRICT JUDGE

CA COMMUNITIES AGAINST TOXICS    MATTCO FORGE, INC.

by: _Jane Williams_              by: _[signature]_

Jane Williams                        Robert Lewis
Executive Director                   President

Date: _Feb 5_, 2018                  Date: _feb. 5_, 2018


**IT IS SO ORDERED:**

Date: _____

                                 _____
                                 Honorable Terry J. Hatter
                                 DISTRICT COURT JUDGE
                                 CENTRAL DISTRICT OF CALIFORNIA